# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| United States *ex rel.* | ) | |
| | ) | |
| JAMES DYE, Realtor | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 2:10-cv-00167-RDP |
| v. | ) | |
| | ) | |
| MAG INSTRUMENT, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT MAG INSTRUMENT, INC.'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1) AND SUPPORTING MEMORANDUM

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................. i

I. INTRODUCTION .................................................................................................1

II. STATEMENT OF RELEVANT FACTS.........................................................4

III. ARGUMENT AND CITATION TO AUTHORITY ......................................5

    A. Standard of Review ...................................................................................5

    B. Article III of the United States Constitution Requires that a Plaintiff, Including a *Qui Tam* Plaintiff, Demonstrate an Injury in Fact .............6

        1. To Establish Article III Standing, a Plaintiff Must Allege an Injury in Fact, Causation, and Redressability .............................6

        2. Article III Standing and the *Qui Tam* Plaintiff ..........................8

        3. Article III Standing in Relation to the False Marking Statute ..10

    C. Dye's Conclusory and Conjectural Allegation of Injury is Not Sufficient to Establish Article III Standing.........................................12

IV. CONCLUSION................................................................................................14

COMES NOW Defendant Mag Instrument, Inc. ("Mag") and hereby moves, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, to dismiss the Complaint filed by Plaintiff James Dye ("Dye") on the grounds that subject matter jurisdiction over this case is lacking because Dye does not have standing to bring this case in that his Complaint does not present a justiciable case or controversy under Article III of the United States Constitution.[1]  The grounds for this motion are set forth in the following memorandum.

## **MEMORANDUM**

### **I.     INTRODUCTION**

Plaintiff Dye's Complaint is brought as a *qui tam* action under the patent false marking statute, 35 U.S.C. § 292.  This statute, which was enacted in 1870, carries a maximum $500 penalty for each "offense."  In recent decades, very few cases have been brought under the statute, likely because of the minimal penalty.  The statute, however, was recently reviewed and interpreted by the Federal Circuit

---

[1] This motion is one of the four motions that Mag has filed today:  (1) a Motion to Dismiss under Rule 12(b)(1) for lack of standing under Article III of the Constitution because Dye cannot demonstrate the existence of a concrete and particularized injury sufficient to confer standing; (2) a Motion to Dismiss under Rule 12(b)(6) and Rule 9(b) for failure to state a claim; (3) a Motion to Stay pending the Federal Circuit's decision on the same standing issue raised in Mag's 12(b)(1) motion, in an appeal involving a nearly identical false marking case that the district court dismissed for lack of standing; and (4) a Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), because the balances of the conveniences weighs heavily in favor of transferring this case to the Central District of California.  In the interest of judicial economy, Mag respectfully requests that the Court consider the Motion to Transfer first, such that the same district court that otherwise will be dealing with the merits of the case (*i.e.*, the transferee court, if the Court grants the Motion to Transfer, or this Court, if the Court denies the motion) can address the remaining substantive motions.

in its decision of *Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295 (Fed. Cir. 2009). In *Forest Group*, the Federal Circuit held that "the plain language of 35 U.S.C. § 292 requires courts to impose penalties for false marking on a per article basis."[2]

As a result of the *Forest Group* decision, a new cottage industry has recently sprung up wherein a private citizen with no connection to the industry or product at issue (unlike in *Forest Group* where a competitor filed a false marking claim) files suit against a manufacturer alleging a violation of § 292 simply because the manufacturer has not removed a patent number from a product covered by the patent upon expiration of the patent. These new suits, however, still must comply with the jurisdictional requirements imposed by Article III of the United States Constitution.

All federal court actions, including *qui tam* actions under § 292, are subject to Article III's requirements of the existence of a justiciable case or controversy. All plaintiffs, including *qui tam* plaintiffs under § 292, must establish Article III standing by demonstrating the existence of an actual injury in fact that is concrete and particularized. With respect to § 292, it has been held that a plaintiff must allege a "concrete and particularized" injury in order to have standing under

---

[2] The court in *Forest Group*, however, made clear that "[t]his does not mean that a court must fine those guilty of false marking $500 per article marked. The statute provides a fine of 'not

Article III to bring such a case. *Stauffer v. Brooks Bros., Inc.*, 615 F. Supp. 2d 248, 254 (S.D.N.Y. May 14, 2009) (appeal pending). In the absence of such a concrete and particularized injury, the court lacks subject matter jurisdiction under Article III.

The plaintiffs filing these false marking *qui tam* actions, like James Dye, do not claim to have been harmed by the alleged false marking. Instead, they simply seek a monetary windfall under a theory that each product marked with an expired patent number could carry a fine of up to $500. This is the exact situation the Court is presented with in this action. Dye does not allege that he is a competitor of Mag Instrument, and he does not allege any relation to or connection with the flashlight industry. The only basis Dye alleges for filing suit against Mag Instrument is that some (but not all) of the patent numbers set forth on the packaging of certain Mag Instrument products are for patents that have expired. Dye has not alleged that he has suffered any concrete and particularized injury as a result of this alleged mismarking. Nor has Dye alleged, as a *qui tam* plaintiff, any concrete and particularized assignable injury suffered by the United States. Rather, he has filed suit only in the hope of collecting a bounty from Mag Instrument in light of the recent *Forest Group* decision. Because Dye has failed to allege the existence of an actual injury in fact that is concrete and particularized,

---

more than $500 for every such offense'. . . . In the case of inexpensive mass-produced articles, a

3

under Article III and the clear guidance of the United States Supreme Court, this action must be dismissed for lack of subject matter jurisdiction.

## II.   STATEMENT OF RELEVANT FACTS

Plaintiff James Dye ("Dye") alleges that Defendant Mag Instrument, Inc. ("Mag") falsely marked its Mag-Lite® and Mini Maglite® products with certain expired patents.[3]

Dye's only allegation of injury follows:

> Marking products with expired patents ***is likely to, or at least has the potential to***, discourage or deter persons and companies from commercializing competing products, which, in turn, causes harm to the

---

court has the discretion to determine that a fraction of a penny per article is a proper penalty."

[3]   In Count I of the Complaint, Dye alleges that Mag has marked its Mag-Lite® product with U.S. Patent No. 4,286,311.  Complaint at ¶ 27.  Dye alleges that the '311 Patent expired "at least" since December 11, 1998.  *Id.* at 25.

In Count II of the Complaint, Dye alleges that Mag has marked its Mag-Lite® product with U.S. Patent No. 4,388,673.  Complaint at ¶ 37.  Dye alleges that the '673 Patent expired on June 22, 2001.  *Id.* at 35.

In Count III of the Complaint, Dye alleges that Mag has marked its Mag-Lite® product with U.S. Patent No. D263,170.  Complaint at ¶ 47.  Dye alleges that the '170 Patent expired on February 23, 1996.  *Id.* at 45.

In Count IV of the Complaint, Dye alleges that Mag has marked its Mini Maglite® product with U.S. Patent No. 5,003,440.  Complaint at ¶ 57.  Dye alleges that the '440 Patent expired on May 17, 2009.  *Id.* at 55.

In Count V of the Complaint, Dye alleges that Mag has marked its Mini Maglite® product with U.S. Patent No. 5,113,326.  Complaint at ¶ 67.  Dye alleges that the '326 Patent expired on May 12, 2009.  *Id.* at 65.

In Count VI of the Complaint, Dye alleges that Mag has marked its Mini Maglite® product with U.S. Patent No. 5,143,441.  Complaint at ¶ 77.  Dye alleges that the '441 Patent expired on September 1, 2009.  *Id.* at 75.

In Count VII of the Complaint, Dye alleges that Mag has marked its Mini Maglite® product with U.S. Patent No. 5,207,502.  Complaint at ¶ 87.  Dye alleges that the '502 Patent expired on May 12, 2009.  *Id.* at 85.

consuming public, including Relator, by quelling product innovation and price competition. Complaint at ¶ 15 (emphasis added).

Defendant's false marking of products with the '311 patent [the '673 patent, the '170 Patent, the '440 Patent, the '326 Patent, the '441 Patent, and the '502 Patent] after [they] expired has wrongfully quelled competition with respect to such products, thereby causing harm to Relator, the United States and the public. Complaint at ¶ 32, 42, 52, 62, 72, 82, 92 (Counts I-VII).

Dye does not allege how he has personally been injured by the alleged "quelled competition." Dye has also failed to allege any specific injury to the United States, or any other individual or business, as a result of the alleged mismarkings. Because Dye has not alleged and cannot demonstrate an injury in fact, he has no standing to sue and his complaint must be dismissed.

### III.   ARGUMENT AND CITATION TO AUTHORITY

#### A.   Standard of Review

Standing is a necessary element of federal court jurisdiction under Article III of the Constitution. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Standing is the threshold question in every federal case. *Id.* at 499. "If the plaintiff does not have standing, there are no other issues to decide." *In re Eldridge*, 348 B.R. 834 (Bankr. N.D. Ala. 2006). Mag has filed concurrently with this motion a motion to dismiss Dye's complaint under Rule 12(b)(6) and Rule 9(b) because Dye has failed to plead facts sufficient to state a claim. However, because standing is jurisdictional, this Court should consider this motion regarding Dye's lack of standing before considering the 12(b)(6) motion.

5

Attacks on subject matter jurisdiction under Rule 12(b)(1) come in two forms. "Facial attacks" on the complaint "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990) (citations omitted). "Factual attacks," on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* Here, Mag challenges subject matter jurisdiction based on the allegations in the complaint. Thus, Mag presents a "facial" challenge to Dye's claims.  Dye, as the party averring jurisdiction, bears the burden of proof that this Court has subject matter jurisdiction over his claims. *Gilmore v. Day*, 125 F. Supp. 2d 468, 470 (M.D. Ala. 2000).

> **B.    Article III of the United States Constitution Requires that a Plaintiff, Including a *Qui Tam* Plaintiff, Demonstrate an Injury in Fact**
>
>> **1.    To Establish Article III Standing, a Plaintiff Must Allege an Injury in Fact, Causation, and Redressability**

Article III of the United States Constitution limits federal court jurisdiction to deciding "cases" and "controversies." *See* U.S. Constitution, Art. III, § 2.  To satisfy this "case or controversy" requirement, all plaintiffs, including *qui tam* plaintiffs, must satisfy "the 'irreducible constitutional minimum' of standing,

6

which is an 'essential and unchanging part' of Article III's case or controversy requirement, and a key factor in dividing the power of government between the courts and the two political branches." *Vermont Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000) (internal citations omitted).

The United States Supreme Court has identified three elements essential to Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "First and foremost, there must be alleged (and ultimately proved) an 'injury in fact' – a harm suffered by plaintiff that is '*concrete and particularized*' and *actual or imminent*, not 'conjectural' or 'hypothetical.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) (emphasis supplied).[4] "Second, there must be causation – a fairly traceable connection between the plaintiff's injury and the complained of conduct of the defendant." *Id*. "And third, there must be redressability – likelihood that the requested relief will address the alleged injury." *Id*. "This triad of injury in fact, causation and redressability constitutes the core of Article III's case or controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Id*. at 102-04.

"With no allegation of injury, the 'hard floor' of Article III standing is absent and there is no subject matter jurisdiction." *Summers v. Earth Island Inst*., --

---

[4] *See also Lujan v. Defenders of Wildlife, Inc.*, 504 U.S. 555, 560 (1992); *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (stating the injury in fact must be "concrete and particularized"); *FEC v. Atkins*, 524 U.S. 11, 24 (1998) (the alleged harm suffered must be "actual" and "concrete;" an

- U.S. ----, 129 S.Ct. 1142, 1152 (2009).  "Standing is not an ingenious academic exercise in the conceivable, but as we have said requires . . . perceptible harm." *Lujan*, 504 U.S. at 566 (internal citations and quotations omitted).  If a plaintiff lacks standing, the court lacks subject matter jurisdiction and must dismiss the plaintiff's claims under Rule 12(b)(1).  *See Paragon Management, L.L.C. v. Slaughter*, 437 F. Supp. 2d 1267 (N.D. Ala. 2006).

### 2. Article III Standing and the *Qui Tam* Plaintiff

Unlike a traditional plaintiff, a *qui tam* plaintiff commonly suffers no injury to himself.  Even in *qui tam* cases, however, standing is not automatic.  The United States Supreme Court addressed relator standing in *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765 (2000).  In that case, a private individual brought a *qui tam* suit under the False Claims Act in federal court. *Id.* at 768.  The Court held that although *qui tam* plaintiffs are "*partial* assignee[s] of the United States" they still must allege concrete and particularized injuries. *Id.* at 771, 774 n.4 (emphasis original).  In that case, the *qui tam* relator alleged that his former employer submitted false records to the Environmental Protection Agency in an effort to receive unearned grant money. *Id.* at 770.  The allegation of a specific actual fraud against the United States resulting in monetary loss was held sufficient to meet the requirements of Article III standing. *Id.* at 774.

---

"abstract harm" such as "injury to the interest in seeing that the law is obeyed . . . deprives the

8

The *Vermont Agency* Court identified two separate injuries the United States had sustained. First, the United States had an obvious and actual economic injury: the EPA's alleged monetary overpayment. *Id*. at 771. This potential monetary loss is the portion of the United States' injury that was assigned to the *qui tam* plaintiff in *Vermont Agency*. Of course, the United States also has a general interest in the faithful obedience of its laws. When this general interest is offended – as it was alleged to have been in *Vermont Agency* – the United States itself can show a separate concrete injury that confers Article III standing on it. *Vermont Agency*, 529 U.S. at 771.

With respect to the false marking statute, it has been held that an alleged violation of the United States' interest in its laws being obeyed cannot alone form the basis for a *qui tam* relator to establish standing. *Stauffer v. Brooks Bros., Inc.*, 615 F. Supp. 2d 248, 254-55 (S.D.N.Y. May 14, 2009) (appeal pending). This is because such a general, abstract injury is not concrete and particularized enough to establish Article III standing. *Id*. As the United States Supreme Court stated in *Lujan*:

> We have consistently held that a plaintiff . . . claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large, does not state an Article III case or controversy.

*Lujan*, 504 U.S. at 573-74.

---

case of the concrete specificity" required for Article III standing).

### 3. Article III Standing in Relation to the False Marking Statute

In relation to the false marking statute, in particular, a *qui tam* relator must identify the specific injury alleged to have been caused by the false marking, because while in "most *qui tam* actions, the alleged injury to the United States as assignor is obvious and proprietary . . . In the context of a section 292 claim . . . the injury to the United States as assignor is far less evident." *Stauffer*, 615 F. Supp. 2d at 254. "By its terms, the statute seeks to protect the public not simply from false marking of unpatented articles but instead from false marking that is fraudulent, deceptive, and intentional." *Id*. "Accordingly, the actionable injury in fact that the government is able to assign would have to be an injury to it or the public stemming from the fraudulent or deceptive false marking." *Id*.

The United States District Court for the Southern District of New York recently dismissed a false marking complaint for failure to allege sufficiently an actual injury to the government, where the complaint, like Dye's complaint here, only alleged a conclusory and conjectural injury to the public. In *Stauffer*, the court dismissed the *qui tam* relator's complaint under 35 U.S.C. § 292, where the relator only pled vague and conclusory allegations of harm just like Dye's allegations of harm in this action. The *Stauffer* plaintiff alleged that Brooks Brothers falsely marked its bow ties with patents that had expired in order to

deceive the public. Specifically, he alleged that the defendants' conduct "ha[d] wrongfully *quelled competition* with respect to [the marked products] thereby causing harm to the economy of the United States[]" and that the defendants had "wrongfully and illegally advertis[ed] patent monopolies that they do not possess" and "ha[d] benefited in at least maintaining their considerable market share . . . ." *Stauffer*, 615 F. Supp. 2d 248, 254 (S.D.N.Y. 2009) (emphasis supplied). With respects to Stauffer's allegation of injury, virtually identical to Dye's allegation of injury here, the court held:

> In particular, the complaint fails to allege with any specificity an actual injury to any individual competitor, to the market for bow ties, or to any aspect of the United States economy. That some competitor might somehow be injured at some point, or that some component of the United States economy might suffer some harm through defendants' conduct, is purely speculative and plainly insufficient to support standing. *Cf. Summers*, ---U.S. at ----, 129 S.Ct. at 1151-52 (finding "some day" harms "without any description of concrete plans, or indeed any specification of when the some day will be -- do not support a finding of the 'actual or imminent' injury that our cases require" (citations omitted)); *Lujan*, 504 U.S. at 566, 112 S.Ct. 2130 ("Standing is not 'an ingenious academic exercise in the conceivable' ... [but] requires ... perceptible harm." (citations omitted)).

*Stauffer*, 615 F. Supp. 2d at 254.[5]

---

[5] As part of its analysis, the court considered a recent decision by another district court, *Pequignot v. Solo Cup Co.*, 640 F. Supp. 2d (E.D. Va. 2009), on standing in the context of a § 292 false marking claim and rejected its approach. In that case, a practicing patent attorney, Pequignot, sued Solo Cup, a manufacturer of disposable cups and lids, for false patent marking and sought to recover $500 per plastic lid. The court held that Pequignot had standing to sue as a *qui tam* plaintiff as an assignee of the government's "sovereign" interest in seeing its laws enforced. *Id*. at 723, n. 15. The court reached this decision even though it found no proprietary

### C. **Dye's Conclusory and Conjectural Allegation of Injury is Not Sufficient to Establish Article III Standing**

To avoid a motion to dismiss, a plaintiff claiming false marking under 35 U.S.C. § 292 must sufficiently plead an actual or imminent injury to himself, the United States or the public as a result of false marking done with the intent to deceive the public. *Stauffer v. Brooks Bros., Inc.* 615 F. Supp. 2d 248, 255 (S.D.N.Y. 2009). Dye has failed to allege any "concrete and particularized" and "actual" or "imminent" injury to himself, the United States, or the public as a result of the alleged false marking.

Here, the deficiencies of Dye's allegations are virtually identical to those in the complaint that the court dismissed in *Stauffer*. On their face, Dye's allegations of injury are conjectural and hypothetical because Dye himself qualifies the alleged injury with the language "*is likely to, or at least has the potential to*." Complaint at ¶ 15 (emphasis added). A mismarking that "*is likely to, or at least has the potential to*" cause "quelled competition" is precisely the type of "conjectural or

---

injury to the United States, and that "the injury to the United States is only to its sovereignty." *Id.* at 728.

The court in *Stauffer* rejected this analysis. First, it explained that even assuming that a violation of the United States' sovereign interest in law enforcement could be assignable and potentially vindicated by a *qui tam* action, there is no harm to this interest "absent an alleged injury in the form of deception to the public." *Stauffer*, 615 F. Supp. 2d at 254, n. 5. In addition, the court found it unlikely that "the Government's interest in seeing its laws enforced could alone be an assignable, concrete injury in fact sufficient to establish a *qui tam* plaintiff's standing." *Id.* As the court explained, "[a]n 'abstract' harm such as 'injury to the interest in seeing that the law is obeyed . . . deprives the case of the concrete specificity' necessary for standing." *Id.* (internal citations omitted).

hypothetical" injury the Supreme Court has deemed insufficient to confer Article III standing. *See Lujan v. Defenders of Wildlife, Inc.*, 504 U.S. 555, 560 (1992); *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990); *FEC v. Atkins*, 524 U.S. 11, 24 (1998).

Moreover, Dye's allegation of harm resulting from purported "quelled competition," even without the qualifying language preceding it, is undoubtedly conclusory. While some courts have found that a defendant's direct competitors may be able to show the requisite "injury in fact" to state a false marking claim, Dye makes no allegation that he is a competitor of Mag. Nor does Dye allege how the mismarking purportedly quelled competition or how the purported quelled competition caused Dye or the United States any harm. Entirely absent from this vague and amorphous allegation of injury is any factual allegation whatsoever that would establish a causal connection between the alleged mismarking and the purported harm of "quelled competition." There are no facts in the Complaint that even suggest a nexus between the allegedly mismarked products and Dye's, the United States, or the general public's buying habits and perceptions. As the Supreme Court stated in *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 118 S.Ct. 1003 (1998), there must exist "a fairly traceable connection between plaintiff's injury and the complained of conduct of the defendant." *Steel*, 523 U.S.

at 103. None of Dye's allegations connect the alleged mismarking of the products at issue to the alleged harm of "quelled competition."

Dye's allegation of harm arising from purported "quelled competition" is identical to the plaintiff's allegation of harm in *Stauffer* and is insufficient to confer Article III standing for the same exact reasons. In short, just as the plaintiff in *Stauffer*, "[Dye] has failed to allege that defendant's conduct has caused an actual or imminent injury in fact to competition, to the United States economy, or to the public that could be assigned to him as a *qui tam* plaintiff or be vindicated through th[is] litigation." 615 F. Supp 2d at 255. "He therefore lacks standing to proceed." *Id*.

## IV.   CONCLUSION

As Dye's complaint alleges no personal injury, he appears to be filing this case only as a professional plaintiff seeking to collect a monetary windfall for alleged conduct that has not affected him in any manner, let alone caused him any harm. Moreover, as a purported *qui tam* plaintiff, Dye has not established any concrete or particularized injury to the public caused by the alleged false marking. Further, Dye has failed to allege that the purported injury would be redressed by a decision in his favor. Accordingly, Dye lacks Article III standing and his complaint must be dismissed for lack of subject matter jurisdiction. For all of the foregoing reasons, the Court should dismiss Dye's complaint because he,

personally and as a *qui tam* plaintiff, has not and cannot allege a cognizable injury in fact to support Article III standing.

Respectfully submitted, this 24th day of March, 2010.

/s/ Paul M. Sykes
Paul M. Sykes

One of the Attorneys for Defendant
Mag Instrument, Inc.


OF COUNSEL:

David G. Hymer
Jess R. Nix
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
(205) 521-8000
(205) 521-8800 (fax)
psykes@babc.com
dhymer@babc.com
jnix@babc.com

Scott Burnett Smith
BRADLEY ARANT BOULT CUMMINGS LLP
200 Clinton Avenue West, Suite 900
Huntsville, AL 35801-4900
(256) 517-5198
(256) 517-5298 (fax)
ssmith@babc.com

John L. Taylor, Jr. (admitted *pro hac vice*)
jtaylor@ctflegal.com
Otto F. Feil (admitted *pro hac vice*)
ofeil@ctflegal.com

Cheralynn M. Gregoire (admitted *pro hac vice*)
cgregoire@ctflegal.com
CHOREY, TAYLOR & FEIL
A Professional Corporation
The Lenox Building, Suite 1700
3399 Peachtree Road, N.E.
Atlanta, Georgia 303216-1148
Telephone:   (404) 841-3200
Facsimile:   (404) 841-3221

## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

W. Lewis Garrison, Jr.
Heninger Garrison & Davis, LLC
2224 1st Avenue North
Birmingham, Alabama 35203
wlgarrison@hgdlawfirm.com

Timothy C. Davis
Heninger Garrison & Davis, LLC
2224 1st Avenue North
Birmingham, Alabama 35203
tdavis@hgdlawfirm.com

Jeffrey P. Leonard
Heninger Garrison & Davis, LLC
2224 1st Avenue North
Birmingham, Alabama 35203
jleonard@hgdlawfirm.com

Douglas Bridges
Heninger Garrison & Davis, LLC
1 Glenlake Parkway
Suite 700
Atlanta, Georgia 30328
dbridges@hgdlawfirm.com

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

NONE

                                         /s/ Paul M. Sykes
                                         OF COUNSEL