FILED

2010 Mar-24  PM 04:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| United States *ex rel.* | ) | |
| | ) | |
| JAMES DYE, | ) | |
| | ) | **CIVIL ACTION NO.:** |
| Relator/Plaintiff, | ) | |
| | ) | **2:10-cv-00167-RDP** |
| v. | ) | |
| | ) | <u>**OPPOSED**</u> |
| MAG INSTRUMENT, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A)</u>

# TABLE OF CONTENTS

Argument...........................................................................................................3

A.      Standards for Section 1404(a) Transfers ........................................................3

B.      Suit could have been brought in the Central District of California
        because Mag is headquartered in that district.................................................4

C.      The Balance of Factors Weighs in Favor of Transfer ....................................5

        1.      Relator Plaintiff's Choice of Forum is Entitled to Little Deference.....5

        2.      The Actions Giving Rise to the Suit All Occurred in California..........7

        3.      Virtually All of the Witnesses Are Located in California. ................10

        4.      The Overwhelming Majority of Critical Documents are in
                California..........................................................................................14

        5.      Considerations of Justice Weigh in Favor of Transfer. .....................15

Conclusion and Prayer for Relief........................................................................16

CERTIFICATE OF SERVICE .............................................................................19

Statement in Compliance with Section IV.B. of ALND Uniform Initial Order (Doc. 7):   On March 24, 2010, the undersigned spoke with Tim Davis, counsel for the Plaintiff, regarding this motion to transfer venue to the Central District of California.   Counsel were not able to resolve this Motion because Plaintiff would prefer that the case proceed in this District.

Late last year, the Federal Circuit decided *Forest Group v. Bon Tool Co.*, expanding the reach of the patent false marking statute, 35 U.S.C. § 292, to require civil penalties on "per-article" basis. 590 F.3d 1295, 1304 (Fed. Cir. 2009). The statute is one of a handful of federal *qui tam* statutes still on the books, and it carries a maximum $500 penalty for every "offense." By permitting penalties to be assessed on a "per-article" basis, the *Forest Group* decision has opened the floodgates to a surge of false marking suits against manufacturers who market thousands or millions of patented products each year. And because the statute splits the penalty 50-50 between the *qui tam* relator and the Government, the possible personal gain for private plaintiffs (or "marking trolls") in false marking litigation has become unlimited. *See* Donald J. Rupert, *Trolling for Dollars: A New Threat to Patent Owners*, 21 No. 3 INTELL. PROP. & TECH. L.J. 1 (2009), *cited in Forest Group*, 590 F.3d at 1303.

The instant case is just such a suit. Defendant Mag Instruments holds numerous patents on its famous "Maglite®" flashlights. Plaintiff Dye is a *qui tam* relator who lives in this District who has sued Mag under § 292, alleging that some of the patents marked on Maglite® and Mini Maglite® flashlights have expired. *See* Doc. 1.

One of the threshold problems with this case is that it has no connection to this District. Mag therefore moves this Court to transfer this action under 28 U.S.C. § 1404(a) to the United States District Court for the Central District of California.[1] Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Mag is proud to be a U.S.-based manufacturer. Mag is headquartered in Ontario, California, within the Central District of California. Mag's manufacturing facilities, where it produces all of its flashlights, are located in the Central District

---

[1] This motion is one of the four motions that Mag has filed today: a Motion to Dismiss under Rule 12(b)(1) for lack of standing under Article III of the Constitution because Dye cannot demonstrate the existence of a concrete and particularized injury sufficient to confer standing; a Motion to Dismiss under Rule 12(b)(6) and Rule 9(b) for failure to state a claim; a Motion to Stay pending the Federal Circuit's decision on the same standing issue raised in Mag's 12(b)(1) motion, in an appeal in a nearly identical false marking case, which the district court dismissed for lack of standing; and a Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), because the balances of the conveniences weighs heavily in favor of transferring this case to the Central District of California. In the interest of judicial economy, Mag respectfully requests that the Court consider the Motion to Transfer first, such that the same district court that otherwise will be dealing with the merits of the case (*i.e.*, the transferee court, if the Court grants the Motion to Transfer, or this Court, if the Court denies the motion) can address the remaining substantive motions.

of California.  Its research, design, and product development activities all occur in the Central District of California.   As a result, all decisions concerning Mag's patent marking were made in the Central District of California, and all of the products whose packaging is marked with its patents were manufactured in the Central District of California.  In fact, all of the acts giving rise to this litigation occurred in the Central District of California, and all witnesses and documents relevant to this patent marking litigation are located in the Central District of California. The only connection this case has to the Northern District of Alabama is that the *qui tam* relator lives here. But the residence of a *qui tam* relator has little to no weight under § 1404 because the real party in interest is the United States. Transfer of this case to the Central District of California would serve the convenience of the parties, the convenience of the witnesses, and the interests of justice.

A<small>RGUMENT</small>

**A.      <u>Standards for Section 1404(a) Transfers</u>**

The standards for transfers of venue under § 1404(a) are well known.  This action meets all of them.  The statutory language reveals three categories of factors that courts must consider, though these factors are not exclusive.  Those factors are (1) the convenience of the parties, (2) the convenience of witnesses, and (3) the interests of justice.  *See Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260

3

(11th Cir. 1996); *Gould v. National Life Ins. Co.*, 990 F. Supp. 1354, 1357 (M.D. Ala. 1998).

The Supreme Court has emphasized that motions for transfer under § 1404(a) should be decided on "'an individualized case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The decision whether to transfer is left to the broad discretion of the trial court. *See A.J. Taft Coal Co. v. Barnhart*, 291 F. Supp. 2d 1290, 1307 (N.D. Ala. 2003).

The analysis of the merits of a § 1404(a) motion to transfer is a two-part inquiry. *See A.J. Taft*, 291 F. Supp. 2d at 1307. First, the Court must determine if the case " 'might have been brought' in the transferee court." *Id.* Second, the court must determine "whether the balance of factors under § 1404(a) weighs in favor of transferring [the] action to the transferee court." *Id.*

**B.** **Suit could have been brought in the Central District of California because Mag is headquartered in that district.**

Mag can satisfy the first step of the analysis because it is headquartered in the Central District of California. *See Irwin v. Zila, Inc.*, 168 F. Supp. 2d 1294, 1296 (M.D. Ala. 2001) ("The first step is to 'determine whether the action could originally have been brought in the transferee forum.'") (quoting *Folkes v. Haley*, 64 F. Supp. 2d 1152, 1155 (M.D. Ala. 1999)). Dye correctly alleges that Mag is headquartered in Ontario, California, which is within the Central District of

4

California. Doc. 1 ¶4; Declaration of James Zecchini, attached as Exhibit A, ¶ 3. Mag "resides" in that district (28 U.S.C. § 1391(b)(1)), "a substantial part of the events or omissions giving rise to the claim occurred" in that district (*id.* § 1391(b)(2)), Mag is "subject to personal jurisdiction" in that district (*id.* § 1391(c)), and Mag can be "found" in that district (*id.* § 1395(a)). Thus, Mag has established the first step because Dye's case could have originally been brought in the Central District of California. *See Gould*, 990 F. Supp. at 1358 (opining that first factor was established because transferee forum was home location for the defendant).

## C.   The Balance of Factors Weighs in Favor of Transfer

When considering the specified § 1404(a) factors, courts also examine a number of other factors including:

> (1) the plaintiff's choice of forum; (2) where the claim arose, (3) the convenience of the parties; (4) the convenience of witnesses and the availability of witnesses through compulsory process; (5) the location of documents and other sources of proof; (6) the local interest in deciding local controversies at home; and (7) trial efficiency and expense to the justice system.

15 WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE 3D § 3847, at 109 (2007). The relevant factors weigh heavily in favor of transfer here.

## 1.   Relator Plaintiff's Choice of Forum is Entitled to Little Deference.

The only factor on Dye's side of the scale is his decision to file this *qui tam* action in his home District. But for two significant reasons, Dye's choice of forum

in this action should carry little weight in this Court's consideration of Mag's motion to transfer.

First, Dye is a *qui tam* relator. In a *qui tam* case, the United States is the real plaintiff in interest. *Timson v. Simpson*, 518 F.3d 870, 873 (11th Cir. 2008). "Accordingly, federal district courts throughout the nation have held that, in *qui tam* actions, the plaintiff's choice of venue is not entitled to the same level of deference as in other actions." *United States ex rel. Roop v. Arkray USA*, 2007 WL 844691, *2 (N.D. Miss. 2007) (collecting cases). In *qui tam* actions, as in class actions, the plaintiff's choice of forum has little or no weight because the potential plaintiffs "are dispersed or have no real interest in the outcome of the action or in litigating in the mutually selected forum." 15 WRIGHT, MILLER & COOPER § 3848, at 127–29. The Supreme Court explained the rationale for this view in the context of a shareholders' derivative action:

> [W]here there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom with equal right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened.

*Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947). Thus, Dye's choice of forum "should be given relatively little weight." *United States ex rel. LaValley v. First Nat'l Bank of Boston*, 625 F. Supp. 591, 594 (D.N.H. 1985).

Second, the Northern District of Alabama has no demonstrable connection to the events at issue in this action.  Courts in the Eleventh Circuit have held that "when 'the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration.' " *Gould*, 990 F. Supp. at 1358 (quoting *Garay v. BRK Electronics*, 755 F. Supp. 1010, 1011 (M.D. Fla. 1991)). *See A.J. Taft*, 291 F. Supp. 2d at 1310. *See generally* 17 MOORE'S FEDERAL PRACTICE 3D § 111.13[1][d] ("If none of the operative events took place in the district in which the action was originally filed, a motion to transfer to the district in which the events occurred is likely to succeed.").

In sum, Dye's decision to sue Mag for false patent marking here, when this District has no connection with the acts at issue, carries very little weight.  *See Gould*, 990 F. Supp. at 1358; *A.J. Taft*, 291 F. Supp. 2d at 1310.  Dye's residence in this District is the only connection the suit has to this forum. All the other relevant factors weigh in favor of granting Mag's motion to transfer venue to the Central District of California.

### 2.    The Actions Giving Rise to the Suit All Occurred in California.

All of the false patent marking claims at issue arose in the Central District of California, where Mag is headquartered. The "place of the alleged wrong" or "location of the operative events" is an important factor in the § 1404(a) analysis.

*See A.J. Taft*, 291 F. Supp. 2d at 1311 ("'[W]here the operative facts underlying the cause of action transpired' is a consideration for convenience.") (quoting *Johnston v. Foster-Wheeler Constructors, Inc.*, 158 F.R.D. 496, 504 (M.D. Ala. 1994)). *Accord In re Horseshoe Entertainment,* 337 F.3d 429, 435 (5th Cir. 2003). This is especially true in patent cases. "Transfer to a corporate defendant's place of business is particularly likely in patent . . . cases." 15 WRIGHT, MILLER & COOPER § 3849, at 181–82 (collecting cases). All the false patent marking claims in Dye's complaint arise from Mag's marketing and manufacture of its products and Mag's knowledge concerning its patents. *See* Doc. 1. All of those activities occurred in California. Zecchini Dec.¶ 4.  Thus, this factor, along with other factors described below, establish that the events giving rise to this cause arose in California and that it should be transferred there. *See,e.g., Laitram v. Hewlett-Packard Co.*, 120 F. Supp. 2d 607, 609-10 (E.D. La. 2000) ("A 'fundamental principle' guiding the Court's analysis is that 'litigation should proceed "in that place where the case finds its 'center of gravity.' " ' . . . Relevant considerations in determining the center of gravity in a given case include the location of a product's development, testing, research, and production, and the place where marketing and sales decisions were made.") (citations omitted); *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 375 (S.D.N.Y. 2006) (transferring patent infringement

action to the Northern District of California, where the relevant products were designed, developed, and produced).

Although Mag has sold flashlights in this District, Mag sells its products in all 50 states, and its Alabama sales are only a small percentage of its overall nationwide sales. Zecchini Dec. ¶ 5. Courts have uniformly held that under these circumstances, in-forum sales are insufficient to establish a material connection to the forum. *Anchor Wall Systems, Inc. v. R&D Concrete Products, Inc.*, 55 F. Supp. 2d 871, 874-75 (N.D. Ill. 1999) (granting motion to transfer venue and stating that "[s]ales alone are insufficient to establish a substantial connection to the forum if defendant's goods are sold in many states"); *Boreal Laser Inc. v Coherent, Inc.*, 22 U.S.P.Q.2d 1559, 1560 (S.D.N.Y. 1992) (granting transfer to Northern California where "facts underlying the cause of action have no material connection to this forum," "relevant documents, records, and production facilities" were in California, and stating that "sales alone are not enough to establish a material connection to the forum if, as is true here, '[d]efendants goods are sold in many states.' ") (quoting *Matra Et Manurhin, v. International Armament Co.*, 628 F. Supp. 1532, 1536 (S.D.N.Y. 1986)); *Fairchild Semiconductor Corp. v. Nintendo*, 810 F. Supp. 173, 175 (D.S.C. 1992) (finding unpersuasive plaintiff's argument that substantial sales were made in district and stating that "[s]ales alone are

generally not enough to establish a material connection to the forum especially if the defendant's goods are sold in many states.").

### 3.    Virtually All of the Witnesses Are Located in California.

"The convenience of the witnesses is often said to be the 'most important factor' in deciding whether to transfer." *Gould*, 990 F. Supp. at 1359 (quoting *Hutchens v. Bill Heard Chevrolet Co.*, 928 F. Supp. 1089, 1091 (M.D. Ala. 1996)); *McNair*, 279 F. Supp. 2d at 1311 (noting that convenience of witnesses is "primary," if not "most important" factor in ruling on motion to transfer). This primary factor weighs heavily in favor of transfer since the crucial fact witnesses in this action—third parties as well as Mag employees—all reside in California, with most in the Central District of California. Zecchini Dec. ¶ 2. *See Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 655 (11th Cir. 1993) (holding that district court did not abuse discretion in transferring venue when it was reasonable to assume that overwhelming majority of witnesses whose testimony might be relevant to the trial resided in the transferee forum).

Further, "the location of key non-party witnesses is afforded more weight in the transfer analysis because they may be unwilling to testify, and the district in which the case is tried has a direct effect on whether parties can compel non-party witnesses to testify." *Rigby v. Flue-Cured Tobacco Co-op. Stabilization Corp*, 2006 WL 1312412, at *4 (M.D. Ga. May 11, 2006); *see also Anchor Wall Systems*,

55 F. Supp. 2d at 874-75 ("The convenience of the plaintiff's non-party witnesses is often viewed as the most important factor in the transfer analysis." ).   In this case, there are numerous crucial third-party witnesses in the Central District of California, including the following:

- John Sebourn of Custom Lithograph, located in Los Angeles, who may provide testimony regarding the printing of blister cards bearing patent numbers included in the packaging of some of the products at issue;

- Jeff James of Eclipse Printing & Graphics, located in Ontario, California, who may provide testimony regarding the printing of warranty instruction sheets bearing patent numbers included in the packaging of the products at issue;

- Chuck Swartzlander of Preferred Box, located in Ontario, California, who may provide testimony regarding the production of cardboard boxes referred to as "chip board boxes," bearing patent numbers and in which some of the products at issue are packaged;

- Pat Dauphinee of Mission Plastics, located in Ontario, California, who may provide testimony regarding the production of plastic injection molded parts (such as reflectors and switch housings) used in the products at issue;

- Joe Johnson and George Anderson of BDO Seidman, LLP, the regular outside accountants for Mag, who may provide testimony on the per-article costs and profitability of the products at issue, which would be directly relevant to the size of the penalty assessed per article should Dye otherwise prove his claim;

- Norm Marshall of Maxcom, Inc., of Sun Valley, California, who may provide testimony on Mag's advertising as it relates to media and product placement;

- Jerrold B. Reilly, Esq., a lawyer in the Los Angeles office of Jones Day, who reviewed and provided legal advice regarding Mag's product packaging before this lawsuit was filed, including the marking of its packaging with patent numbers, and whom Mag may call to support an advice-of-counsel defense and corroborate that Mag had no deceptive intent with respect to the patent marking at issue;

- Michele Fiorentine, a paralegal with Jones Day in Los Angeles, who is the custodian of the file containing Mag's product advertisements and as a result of her working closely with Mag for many years in litigation, including patent litigation, is very familiar with the types and locations of documents that will be relevant to this case.

Zecchini Dec. ¶ 2 F-M.

In addition to the numerous third-party witnesses listed above, the testimony of several Mag officers and employees, all of whom reside in California, will be critical to this case.   These Mag witnesses include Anthony Maglica, Mag's President and Owner; James Zecchini, Mag's Corporate Vice-President; David Hefner, Mag's Manager of Marketing Communications; Gus Hawthorn, Mag's Director of Engineering; and Tom Richardson, Mag's Vice President of Marketing. Zecchini Dec. ¶ 2 A-D.   Among other subjects, these corporate officers will testify that Mag did not mark its products with an intent to deceive, which is a core issue in this case.   Further, the testimony of additional California-based Mag employees may be required as the case develops.  *See Gould*, 990 F. Supp. at 1359 (weighing this factor in favor of transfer because key officers of defendant were located in transferee venue); *Irwin*, 168 F. Supp. 2d at 1296 ("The fact that most of these witnesses reside in Arizona is of considerable importance since 'the forum in which the majority of material witnesses reside is the most convenient forum.'"); *Barnett*, 171 F. Supp. 2d at 1295 (concluding that convenience of parties and witnesses weighed "strongly in favor of transfer" when the majority of witnesses were located in the transferee forum).   Finally, there are no critical witnesses that Mag knows of who reside in Alabama. Zecchini Dec. ¶ 2.

Section 1404(a) also refers expressly to the "convenience of the parties." For these reasons, it would certainly be more convenient for this action to proceed in

the Central District of California. Dye's individual convenience does not outweigh the collective convenience established by the foregoing facts. *See Ardco Inc. v. Page, Ricker, Felson Marketing, Inc.*, 25 U.S.P.Q. 2d 1382, 1386-87 (N.D. Ill. 1992) (despite plaintiff corporation's filing patent case in district where its headquarters and principal place of business were located, granting motion to transfer to Central District of California because "[a]ll of [defendant's] activities in researching, designing, building prototypes, and manufacturing . . . occurred in the Central District of California. . . . [and] almost all of the many witnesses who will be called by [defendant] to prove its case" are located in California).

### 4. <u>The Overwhelming Majority of Critical Documents are in California.</u>

The overwhelming majority of documentary evidence will be in California at Mag's headquarters. Zecchini Dec. ¶ 3. It would be more expensive and difficult to either transport or copy these documents for transport to Alabama. Likewise, access in Alabama to third-party documents located in California would impose increased expense and hardships on the parties and producing entities. Like the location of witnesses, this factor supports transferring this action to the Central District of California. *See, e.g., Ross*, 980 F.2d at 655 (holding that district court did not abuse discretion in transferring venue where it was undisputed that plant and employment records relevant to lawsuit were located within transferee forum); *Irwin*, 179 F. Supp. 2d at 1296 (recognizing that transporting 80,000 pages of

documents "undeniably poses a considerable burden upon Defendants"); *Ardco*, 25 U.S.P.Q. at 1386-87 (granting transfer where all of the documents, "including any design documents, manufacturing documents, and marketing and sales documents," and the custodians of these documents were located in California).

### 5.     Considerations of Justice Weigh in Favor of Transfer.

The interest of justice weighs in favor of transferring this matter. The Supreme Court has stated that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947). Moreover, there is an interest in "having localized controversies decided at home." *Gulf Oil*, 330 U.S. at 509. Dye's residence here is the *only* nexus this action has with the Northern District of Alabama. Conversely, the factual events surrounding the false patent marking claims occurred at Mag's corporate home is in Ontario, California. Zecchini Dec. ¶ 3. In addition, crucial fact witnesses in this action—third parties as well as Mag employees—all reside in California, with most in the Central District of California. Zecchini Dec. ¶ 2. Overall, this litigation's center of gravity is in California's Central District. Transferring this matter there will serve the interests of justice because the citizens of California have a greater interest in this dispute than the citizens of Alabama. "[T]he administration of justice is served more efficiently when the action is litigated in the forum that more clearly encompasses the locus of

operative facts to the extent they may have a bearing in the proper

resolution of the dispute." 15 WRIGHT, MILLER & COOPER § 3854, at 293. As a

general rule in patent cases, "the preferred forum is that which is the center of

gravity of the accused activity." *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. at 482

n.17.

Furthermore, the State of California has an interest in monitoring its

corporations to ensure that they establish policies and procedures that protect its

citizenry. The district court in *Irwin v. Zila, Inc.* had to determine whether a

securities class action alleging fraudulent misrepresentations should be transferred

from Alabama to Arizona. *See* 168 F. Supp. 2d at 1295. In concluding that the

considerations of justice weighed in favor of transfer, the district court opined that

"Arizona has an interest in demanding that its resident corporations adhere to a

level of protocol in conducting their business activities, especially when the

alleged misdeeds took place within that forum." *Id.* at 1297. The State of

California has a more compelling interest than the State of Alabama in the

adjudication of the allegedly wrongful patent marking activities of a resident

California corporation at issue in this case.

## CONCLUSION AND PRAYER FOR RELIEF

The factors under 28 U.S.C. § 1404(a) weigh in favor of transferring this

action. Dye's residence here has little or no weight given that this is a *qui tam*

action. Otherwise, this case's center of gravity of lies entirely within the Central District of California. The Court should transfer it there for the convenience of the parties, the convenience of the witnesses and in the interests of justice.

WHEREFORE, PREMISES CONSIDERED, Defendant Mag Instrument prays this Court will enter an order transferring this action to the United States District Court for the Central District of California.

Respectfully submitted,

/s/ Paul M. Sykes
Paul M. Sykes

One of the Attorneys for Defendant
Mag Instrument, Inc.

OF COUNSEL:

David G. Hymer
Jess R. Nix
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
(205) 521-8000
(205) 521-8800 (fax)
psykes@babc.com
dhymer@babc.com
jnix@babc.com

Scott Burnett Smith
BRADLEY ARANT BOULT CUMMINGS LLP
200 Clinton Avenue West, Suite 900
Huntsville, AL 35801-4900
(256) 517-5198
(256) 517-5298 (fax)
ssmith@babc.com

John L. Taylor, Jr. (admitted *pro hac vice*)
jtaylor@ctflegal.com
Otto F. Feil (admitted *pro hac vice*)
ofeil@ctflegal.com
Cheralynn M. Gregoire (admitted *pro hac vice*)
cgregoire@ctflegal.com
CHOREY, TAYLOR & FEIL
A Professional Corporation
The Lenox Building, Suite 1700
3399 Peachtree Road, N.E.
Atlanta, Georgia 303216-1148
Telephone:   (404) 841-3200
Facsimile:   (404) 841-3221

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 24, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

W. Lewis Garrison
Timothy C. Davis
Jeffrey P. Leonard
HENINGER GARRISON & DAVIS, LLC
2224 1st Avenue North
Birmingham, AL 35203
(205) 326-3336

Douglas Bridges
HENINGER GARRISON & DAVIS, LLC
1 Glenlake Parkway
Suite 700
Atlanta, GA 30328
(678) 638-6309

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

NONE

/s/ Paul Sykes
OF COUNSEL

19